In the District Court of the United States
For The District of South Carolina

BEAUFORT DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC

2006 MAR 31 A 10: 21

| | |
|---|---|
| Tony A. Fair, Jr., #Y298270, ) | Civil Action No. 9:05-2430-MBS-GCK |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF THE MAGISTRATE JUDGE** |
| Ms. Hallman, Mr. Rainwater, ) | |
| Mr. Michael Sheedy (Institution ) | |
| Warden), and Ms. Player, ) | |
| ) | |
| Defendants. ) | |

## I. INTRODUCTION

The Plaintiff, Tony A. Fair, Jr. ("Plaintiff" or "Fair") was convicted in Richland County in 2003 for possession of a stolen vehicle and sentenced to four (4) years in prison under the South Carolina Youthful Offender Act, S.C. Code Ann. § 24-19-10 *et seq.* Plaintiff filed this action against the defendants Ms. Ann Hallman, Mr. Kenneth M. Rainwater, Ms. Katie Player, and Mr. Michael Sheedy, the Warden of Turbeville Correctional Institution (collectively, the "Defendants"), seeking damages against the Defendants based on alleged constitutional violations they committed while he was incarcerated.



Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II. *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214, codified at 28 U.S.C. § 2254. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).



*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III. FACTUAL BACKGROUND

Plaintiff arrived at SCDC's Kirkland Reception and Evaluation Facility on December 4, 2003.[1] Plaintiff was transferred to Stevenson to complete the SHOCK Incarceration Program on January 12, 2004. Had Plaintiff successfully completed the SHOCK program, Plaintiff could have

---

[1] See Affidavit of Kenneth M. Rainwater ("Rainwater Affidavit") attached as [11-3]

been released in ninety days. Instead, however, Plaintiff was terminated from the SHOCK program on February 21, 2004 due to a disciplinary infraction, and was transferred to TCI on February 24, 2004, where he began Phase I of the Youthful Offender Intensification Program (the "YOIP"). Prisoners enrolled in the YOIP generally become eligible for release in ten months, after completing the four phases of that behavior-driven program.[2]

On March 10, 2004 and March 14, 2004, Plaintiff was charged with "Threatening to Inflict Harm" upon agency employees. One of these charges was a major disciplinary infraction. Plaintiff received the required hearing, pled guilty to a lesser disciplinary offense, and received a 60-day setback to his YOIP time. Plaintiff's records filed with the court reveal that this setback (which eventually was rescinded) did not actually increase his time in the YOIP because Plaintiff continued to receive disciplinary setbacks prior to the time that his original 10-month YOIP period would have expired.[3]



The record before the court likewise reveals that Plaintiff has experienced disciplinary problems throughout his stay at TCI. In fact, Plaintiff's accumulated disciplinary violations have now set him back to his original max-out date of August 30, 2007.[4]

## IV. PROCEDURAL HISTORY IN FEDERAL COURT

The Plaintiff commenced this Section 1983 action on August 10, 2005,[5] alleging that the Defendants treated him unfairly at a disciplinary hearing and improperly imposed a 60-day disciplinary setback against him. Specifically, Plaintiff contends that this setback wrongfully delayed his release from TCI. It appears that Plaintiff also contends that his appeal from an

---

[2] See Rainwater Affidavit. [11-3]

[3] See Rainwater Affidavit. [11-3]

[4] See Rainwater Affidavit. [11-3]

[5] Plaintiff has the benefit of the holding of Houston v. Lack, 487 U.S. 266 (1988) with respect to the delivery date of his Complaint. [4-1]

adverse decision in a disciplinary hearing was deliberately delayed by the Defendants.[6] Plaintiff alleges he suffered damages stemming from the delay because two of his relatives died during that time period, and Plaintiff holds the Defendants accountable for the loss of his family members during that time. [1-1]

Plaintiff named the following TCI personnel as Defendants: (1) Ms. Player, the Human Service Specialist who advised him to grieve the setback at issue; (2) Ms. Hallman, Supervisor of the South Carolina Department of Corrections Grievance Branch; (3) Mr. Rainwater, TCI's Institutional Grievance Coordinator, who recommended that the 60-day setback period be rescinded because the tape of Plaintiff's guilty plea had been lost; and (4) TCI Warden Sheedy, who accepted Mr. Rainwater's recommendation to remove the sanction.

Plaintiff seeks compensatory and punitive damages against Defendants for "the loss of time [and] death of family members" and seeks release from TCI.[7] [1-1]

On October 4, 2005, an answer was filed on behalf of the Defendants [7-1] and on February 16, 2006, the Defendants filed a Motion for Summary Judgment and a supporting Memorandum, along with various exhibits which included an affidavit by Mr. Rainwater, the Inmate Grievance Forms relevant to the action, and Plaintiff's disciplinary records. [11-1; 11-2; 11-3; 11-4] Thereafter, on February 17, 2006 the undersigned issued an Order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the dismissal procedure

---

[6] The underlying facts which gave rise to this disciplinary hearing appear to be the subject of another lawsuit brought by the Plaintiff (*Fair v. Rowe*, et al., 9:05-1025-MBS-GCK). In that case, Plaintiff alleges that the defendants used excessive force against him. That case is pending before the court.

[7] Plaintiff further seeks to hold the Defendants criminally liable. Of course, Plaintiff cannot have this court prosecute criminal charges against the Defendants, as "[n]o citizen has an enforceable right to institute a criminal prosecution." *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990), citing *Linda R. V. Richard V.*, 410 U.S. 614, 619 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

and the possible consequences if he failed to adequately respond to the Motion for Summary Judgment. [12-1]

In response, Plaintiff filed a Motion for More Definite Statement on March 1, 2006 which appeared to the court to be an argument on the merits of the case. [13-1] Plaintiff's Motion was denied on March 3, 2006, and the undersigned issued an order allowing Plaintiff an additional twenty (20) days in which to respond to the Motion for Summary Judgment. [14-1] Thereafter, on March 20, 2005, Plaintiff filed a Motion to Deny Summary Judgment. [15-1] Accordingly, this matter is ripe for review by the undersigned.

## V. THE STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

The Defendants' Motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.



It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

In deciding whether to grant a motion for summary judgment, all justifiable inferences must be drawn in favor of the non-moving party. *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "once a plaintiff 'has named a witness to support [his] claim, summary judgment should not be granted without . . . somehow showing that the named witness' possible testimony raises no genuine issue

of material fact.'" *Miltier*, 896 F.2d at 852, *quoting Celotex v. Catrett*, 477 U.S. 317, 328 (1986) (White J., concurring).

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56©) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

When, as in the present case, the Defendants are the moving party, and the Plaintiff has the ultimate burden of proof on an issue, the Defendants must identify the parts of the record that demonstrate the Plaintiff lacks sufficient evidence. The nonmoving party, then, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## VI. PLAINTIFF'S CLAIMS



Construed liberally, the court interprets Plaintiff's Complaint as claiming a violation of his constitutional rights.

### A. Exhaustion

As a threshold matter, the court must address whether Plaintiff has exhausted the available administrative remedies prior to filing suit. The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In *Porter v. Nussle,* the United States Supreme Court held that "the PLRA's

exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." 534 U.S. 516, 532 (2002). However, the exhaustion requirement is an affirmative defense which the defendants have the burden to plead and prove. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir.2005).

In the present case, the Defendants raised Plaintiff's failure to exhaust as an affirmative defense in their answer ([7-1] at p. 5,) but they did not move for summary judgment on this basis. Of course, the "[d]efendants may . . . . be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures." *Stenhouse v. Hughes*, — F.Supp.2d —, 2006 WL 752876 at *2 (D.S.C. March 21, 2006), *citing Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir. 2004). As Judge Herlong noted in *Stenhouse,* "[a]dditionally, exhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies." *Stenhouse,* — F.Supp.2d —, 2006 WL 752876 at *2, *citing Abney* 380 F.3d at 667.



In the present case, it is not clear to the court whether Plaintiff exhausted his administrative remedies prior to filing suit, and the Defendants have not argued this issue as a basis for summary judgment. Therefore, the court is led to conclude that Defendants have conceded this point, and the court will turn its attention to Plaintiff's allegations in this case.

### B. Whether Plaintiff has a protected liberty interest

First, Plaintiff's claims must fail because he cannot establish that South Carolina's Youthful Offender Act gives rise to any protected liberty interest. In *Van Deusen v. Evatt*, 28 F.3d 1212 (Table), 1994 WL 276758 (4th Cir. June 20, 1994) (per curiam), *cert denied*, (Oct. 31, 1994), the Fourth Circuit recognized that "much of the statute's language, including the introductory phrases to the latter two paragraphs, accords a good deal of discretion to the Department of Corrections. Terms such as "as far as is advisable and necessary" and "[i]nsofar as

practical and to the greatest degree possible" are generally insufficiently mandatory to create a protected interest." *Id.* at * 3 *citing* § 24-19-60; *see also* §§ 24-19-90 through 24-19-110; and § 24-19-150. Thus, the statute itself does not create any type of protected interest that would implicate constitutional protections.

Second, "it is well settled that to maintain an action against public officials, a plaintiff "must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (*citing Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969))" *cited in Van Deusen, supra*, at *2. Here, Plaintiff has sustained no such injury. In fact, he has actually benefitted from the actions of some of the Defendants. For example, Ms. Player advised him of the need to file a grievance, and Mr. Rainwater investigated the grievance, ultimately recommending that the 60-day setback period be revoked when the hearing tape could not be located. Warden Sheedy accepted this recommendation and revoked the setback.[8]



## C. Defendants are Entitled to Qualified Immunity

Furthermore, the Defendants in this case are entitled to the defense of qualified immunity. Defendants were acting within the scope of their discretionary authority when acting with respect to Plaintiff's disciplinary processing and grievance procedure. Any acts or omissions of these Defendants in addressing his disciplinary infractions and their aftermath have not violated any clearly established law or constitutional right. *See Daniels v. Williams*, 474 U.S. 327 (1986). In *Van Deusen, supra*, when analyzing the inmate's allegations surrounding the minimum custody provisions of South Carolina's Youthful Offender Act, the Fourth Circuit explained:

> The objective inquiry necessary to assess an official's qualified immunity defense requires a court to determine whether that official "could reasonably have . . . thought [his actions] consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483

---

[8]    It is unclear what Mr. Hallman allegedly did, other than speaking with Plaintiff about a grievance backlog.

Page 8 of 11

> U.S. 635, 638 (1987); *see also Taylor v. Farmer*, 13 F.3d 117, 120 (4th Cir.1993). Therefore, in order for a public official to lose the protection of his qualified immunity, there must be a clearly established right at issue, and a reasonable person in the officer's position must have known he was violating that right. *See Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir.1992). In the case before us, we can say neither that the rights alleged by *Van Deusen* were clearly established nor that reasonable people in the place of appellees would have known they were acting in violation of them. *Van Deusen* at *3.

The same reasoning applies to the present case.

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court reiterated the three-step inquiry to be examined in determining whether qualified immunity protects the individual defendant. The test requires:

1. The identification of the specific constitutional right allegedly violated;

2. Inquiry as to whether at the time of the alleged violation, the right was clearly established; and

3. Inquiry as to whether a reasonable person in that official's position would have known that his conduct would violate that right.

*See also Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992). Here, Plaintiff cannot satisfy even the first element of the qualified immunity inquiry. Accordingly, Plaintiff's claims must fail.

## RECOMMENDATION

Based upon the foregoing, it is recommended that the Defendant's Motion for Summary Judgment **[11-1] should be granted.**

George C. Kosko
United States Magistrate Judge

March **30**, 2006

Charleston, South Carolina

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate**

> **judge] useless. \* \* \* This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. \* \* \* We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. \* \* \* A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
